UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| SHARONDA SIMPSON, | § | |
| | § | |
| Plaintiff, | § | |
| VS. | § | CIVIL ACTION NO. 4:20-CV-1860 |
| | § | |
| SYNERGENX HEALTH KINGWOOD LLC, | § | |
| *et al*, | § | |
| | § | |
| Defendants. | § | |

## ORDER

Before the Court are Defendants' Motion to Stay Proceedings and Compel Arbitration (the "Motion") (Doc. #5), Plaintiff's Response (Doc. #6), and Defendants' Reply (Doc. #8). Having considered the parties' arguments and applicable law, the Court denies the Motion.

**I.     Background**

On April 23, 2017, Plaintiff Sharonda Simpson began working at a clinic jointly owned by Defendants SynergenX Health Kingwood LLC, SynergenX Physician Services PLLC, and SynergenX Health Holdings, LLC. Doc. #1, Ex. 1 ¶¶ 10–11. As part of her employment, Plaintiff received an employee handbook, entitled "Employee Handbook, Safety Policy, Arbitration Plan and Drug and Alcohol Policy." Doc. #5, Ex. A. The Arbitration Plan (the "Plan") included the following relevant provisions:

- "The Company and Applicant/Employee each voluntarily promise and agree to submit any claim covered by this agreement to binding arbitration" (the "Arbitration Provision");
- "The arbitration will be conducted in accordance with the Model Employment Arbitration Rules of the American Arbitration Association ('AAA')" (the "Delegation Clause");
- "This Agreement may not be altered except by consent of the Company and shall be immediately effective upon notice to Applicant/Employee of its terms, regardless of whether it is signed by

1

>either Agreeing Party. Any change to this Agreement will only be effective upon notice to Applicant/Employee and shall only apply prospectively" (the "Modification Clause").

*Id.* at 40. On June 21, 2018, Plaintiff signed a form acknowledging she had received the employee handbook and agreed to its policies and procedures, including the Plan. *Id.*, Ex. B. In August 2018, Plaintiff informed her supervisors of two incidents of sexual harassment by a patient. Doc. #1, Ex. 1 ¶¶ 12–24. On September 11, 2018, Plaintiff's employment was terminated. *Id.* ¶ 26.

On April 1, 2020, Plaintiff sued Defendants in state court, alleging sexual harassment and retaliatory discharge in violation of Title VII of the Civil Rights Act and Chapter 21 of the Texas Labor Code. *Id.* ¶¶ 30–51. On May 28, 2020, Defendants timely filed a Notice of Removal in this Court. Doc. #1. Defendants now move to compel arbitration under 9 U.S.C. § 4 of the Federal Arbitration Act ("FAA"), arguing that the Plan is a valid arbitration agreement that covers Plaintiff's employment discrimination claims. Doc. #5 at 3–5. Defendants also contend that the Delegation Clause requires the parties to submit threshold questions of arbitrability to the arbitrator. *Id.* at 6–7.

**II.    Legal Standard**

When reviewing a motion to enforce an arbitration agreement, the court asks two questions: (1) "whether there is a valid agreement to arbitrate" and (2) "whether the current dispute falls within the scope of a valid agreement." *Edwards v. Doordash, Inc.*, 888 F.3d 738, 744 (5th Cir. 2018) (citation omitted). But if the party seeking arbitration identifies a delegation clause, the court conducts the first inquiry—"an analysis of contract formation"—and "the only question, after finding that there is in fact a valid agreement, is whether the purported delegation clause is in fact a delegation clause. If there is a delegation clause, the motion to compel arbitration should be granted in almost all cases." *Id.* (quoting *Kubala v. Supreme Prod. Servs., Inc.*, 830 F.3d 199,

202 (5th Cir. 2016)).

### III. Analysis

#### a. Existence of an Agreement to Arbitrate

In considering whether the parties have an agreement to arbitrate, courts "distinguish between validity or enforceability challenges and formation or existence challenges. Where the very existence of a contract containing the relevant arbitration agreement is called into question, the federal courts have authority and responsibility to decide the matter." *Arnold v. Homeaway, Inc.*, 890 F.3d 546, 550 (5th Cir. 2018) (internal alteration and quotation omitted). "[A]rguments that question the very existence of an agreement include 'whether the alleged obligor ever signed the contract, whether the signor lacked authority to commit the alleged principal, and whether the signor lacked the mental capacity to assent.'" *Id.* (quoting *Buckeye Check Cashing, Inc. v. Cardegna*, 546 U.S. 440, 444 n.1 (2006)). But "federal courts do not consider general challenges to the validity of the entire contract" when determining whether an arbitration agreement exists. *Edwards*, 888 F.3d at 744 (citing *Buckeye*, 546 U.S. at 449).

Here, the Arbitration Provision requires the parties "to submit any claim covered by this agreement to binding arbitration." Doc. #5, Ex. A at 40. Plaintiff does not contest the existence or formation of the Arbitration Provision. For example, Plaintiff does not dispute her signature on the form acknowledging her agreement or mental capacity to assent. *See Arnold*, 890 F.3d at 550. Rather, Plaintiff argues that the Modification Clause renders the Plan illusory and, therefore, unenforceable under Texas law. Doc. #6 at 4–6. Because "courts do not consider general challenges to the validity of the entire contract" at this stage of the analysis, the Court need not decide whether the Plan is illusory for an arbitration agreement to exist. *See Edwards*, 888 F.3d at 744. Therefore, the Court determines that the Arbitration Provision constitutes a "valid

agreement to arbitrate." *See id.*

Accordingly, because the parties have an agreement to arbitrate, and Defendants point to a delegation provision, the Court next asks "whether the purported delegation is in fact a delegation clause." *See id* at 744 (quoting *Kubala*, 830 F.3d at 202).

### b. Validity of Delegation Provision

#### 1. Agreement to Delegate

"Under the FAA, parties are free to delegate questions to an arbitrator, including questions regarding the validity and scope of the arbitration provision itself. However, courts may not assume that parties have agreed to arbitrate threshold questions absent clear and unmistakable evidence of their intent to do so." *Arnold*, 890 F.3d at 551–52. In the Fifth Circuit, "generally, stipulating that the AAA Rules will govern the arbitration of disputes constitutes such 'clear and unmistakable' evidence." *Id.* at 552. If the arbitration agreement contains a delegation clause, "absent a challenge to the delegation clause itself, [the court] will consider that clause to be valid and compel arbitration." *See Edwards*, 888 F.3d at 744.

Here, the Delegation Clause provides that the Model Employment Arbitration Rules of the AAA will govern the arbitration of disputes.[1] Doc. #5, Ex. A at 40. Because the Delegation Clause expressly incorporates the AAA rules, the parties have clearly and unmistakably demonstrated their intent to arbitrate threshold questions, including questions about the validity of the Plan. *See Arnold*, 890 F.3d at 551–52. For that reason, the Court finds that the parties agreed to delegate

---

[1] Under Rule 6(a) of the AAA Model Employment Arbitration Rules, "[t]he arbitrator shall have the power to rule on his or her own jurisdiction, including any objections with respect to the existence, scope or validity of the arbitration agreement." AM. ARB. ASS'N, EMPLOYMENT ARBITRATION RULES AND MEDIATION PROCEDURES 6(a) (2009), https://adr.org/sites/default/files/EmploymentRules_Web_2.pdf.

threshold questions to the arbitrator. *Id.* at 551.

Accordingly, because the Delegation Clause constitutes "clear and unmistakable" evidence of the parties' intent to delegate, the Court must treat the Delegation Clause as valid and compel arbitration "absent a challenge to the delegation clause itself." *See Edwards*, 888 F.3d at 744.

### 2. Plaintiff's Challenge

"If a party challenges the validity [] of the precise agreement to arbitrate at issue, the federal court must consider the challenge before ordering compliance with that agreement." *Rent-A-Ctr., W., Inc. v. Jackson*, 561 U.S. 63, 71 (2010). But "the basis of challenge [must] be directed specifically to the agreement to arbitrate before the court will intervene." *Id.* This is true even when the agreement to arbitrate at issue is "an agreement to delegate threshold questions to an arbitrator." *See Arnold*, 890 F.3d at 553 (internal quotation omitted) (explaining that "a challenge to the validity of the contract as a whole, and not specifically to the arbitration clause, must go to the arbitrator . . . even when the 'contract as a whole' is an arbitration agreement, and the 'arbitration clause' at issue is an agreement to delegate threshold questions to an arbitrator").

Here, Plaintiff argues that the Delegation Clause is invalid because "Defendants' promise . . . to submit arbitrability to an arbitrator was, itself, illusory." Doc. #6 at 7–8. Notably, Defendants do not dispute the illusoriness of the Delegation Clause, instead asserting that "Plaintiff's arguments demonstrate clearly that she is challenging the [] Plan as a whole," an issue reserved to the arbitrator. Doc. #8 at 5. In support, Defendants rely on cases in which the party opposing arbitration challenged only the agreement "as a whole" and not the delegation clause in particular. *See Arnold*, 890 F.3d at 554 (party argued that "arbitration provision as a whole [was] unenforceable"); *Rent-A-Ctr.*, 561 U.S. at 72–73 (emphasis omitted) (party failed to mention delegation clause in opposition to motion to compel arbitration and alleged that "arbitration

agreement as a whole" was unconscionable). Yet neither party has cited case law involving a challenge to the delegation clause itself, nor has this Court located Supreme Court or Fifth Circuit authority addressing such a challenge.

Still, in *Rent-A-Center*, the Supreme Court suggested that a federal court may consider a party's argument that another provision in the arbitration agreement "*as applied*" to the delegation provision renders "*that provision*" invalid.[2] *Rent-A-Ctr.*, 561 U.S. at 74. Albeit dicta, the Court posited that the plaintiff could have argued that complying with discovery procedures required by the arbitration agreement "causes the arbitration of his claim that the Agreement is unenforceable to be unconscionable." *Id.* In this case, *Rent-A-Center* is instructive.

Here, Plaintiff asserts that the Modification Clause allows Defendants to "incorporate other arbitration rules," "craft their own," or "revoke" the Delegation Clause and makes these changes "effective immediately upon notice to [Plaintiff]." Doc. #6 at 7. Stated differently, Plaintiff's

---

[2] Because the Fifth Circuit has not addressed a challenge specifically to the delegation clause, the court has not considered *Rent-A-Center* in this context. But other circuit courts of appeals have construed *Rent-A-Center* to hold that, "[i]n specifically challenging a delegation clause, a party may rely on the same arguments that it employs to contest the enforceability of other arbitration agreement provisions." *MacDonald v. CashCall, Inc*, 883 F.3d 220, 226–27 (3d Cir. 2018); *see Minnieland Priv. Day Sch., Inc. v. Applied Underwriters Captive Risk Assurance Co.*, 867 F.3d 449, 455–56 (4th Cir. 2017) (internal quotation omitted) (holding that, because party had argued that state statute rendered void any arbitration provision in agreement, which "necessarily includ[ed] the delegation provision," it challenged delegation provision "with sufficient force and specificity to satisfy *Rent-A-Center*"). Additionally, courts have required the party opposing arbitration to "at least reference the [delegation] provision in its opposition to a motion to compel arbitration." *MacDonald v. CashCall, Inc*, 883 F.3d 220, 226 (3d Cir. 2018); *see Gibbs v. Haynes Invs., LLC*, 967 F.3d 332, 338 (4th Cir. 2020) (internal quotations and alterations omitted) (finding that, because parties had argued that the "delegation clauses [were] unenforceable for the same reason as the underlying arbitration agreement," they challenged those clauses with "sufficient force and specificity . . . to warrant district court's threshold review"); *Parm v. Nat'l Bank of Cal, N.A.*, 835 F.3d 1331, 1335 n.1 (11th Cir. 2016) (determining that, because party had "directly challenged the delegation clause" in response to the motion to compel, court had jurisdiction to consider such challenge). Because the Fifth Circuit has not yet adopted this interpretation of *Rent-A-Center*, the Court declines to do so here.

argument is that the Modification Clause "causes" the parties' agreement to delegate to be an illusory promise. *See Rent-A-Ctr.*, 561 U.S. at 74. In this way, Plaintiff has argued that the Modification Clause "as applied to the delegation provision render[s] that provision [illusory]." *See id.* (emphasis omitted). Thus, the Court finds the basis of Plaintiff's specific challenge to the Delegation Clause sufficient to warrant judicial intervention. *See id.* at 71 ("[T]he basis of challenge [must] be directed specifically to the agreement to arbitrate before the court will intervene.").

Accordingly, because Plaintiff has challenged the Delegation Clause specifically, the Court must consider the validity of that clause. *See id.* at 71 ("If a party challenges the validity [] of the precise agreement to arbitrate at issue, the federal court must consider the challenge before ordering compliance with that agreement.").

### 3. Illusoriness

A delegation provision "is valid under § 2 [of the FAA] 'save upon such grounds as exist at law or in equity for the revocation of any contract.'" *Rent-A-Ctr*, 561 U.S. at 70 (quoting 9 U.S.C. § 2). "To determine whether an agreement to arbitrate is contractually valid, courts apply 'ordinary state-law principles that govern the formation of contracts.'" *Lizalde v. Vista Quality Mkts.*, 746 F.3d 222, 225 (5th Cir. 2014) (quoting *Morrison v. Amway Corp.*, 517 F.3d 248, 254 (5th Cir.2008)). Here, Defendants do not dispute the application of Texas law.

Under Texas law, an arbitration agreement is illusory "[w]here one party has the unrestrained unilateral authority to terminate its obligation to arbitrate." *Lizalde*, 746 F.3d at 225. In *Halliburton*, the Texas Supreme Court held that an arbitration agreement was not illusory, even though an employer had retained unilateral termination power, because the agreement also contained provisions preventing the employer from amending or terminating the agreement

without ten-day notice. *In re Halliburton Co.*, 80 S.W.3d 566, 569–70 (Tex.2002). Since *Halliburton,* the Fifth Circuit has established that "retaining termination power does not make an agreement illusory so long as that power (1) extends only to prospective claims, (2) applies equally to both the employer's and employee's claims, and (3) so long as advance notice to the employee is required before termination is effective." *Lizalde*, 746 F.3d at 226. Applying this test, the court in *Nelson* determined that the following provision rendered an arbitration agreement illusory:

> This agreement may not be altered except by consent of the Company and shall be immediately effective upon notice to Applicant/Employee of its terms, regardless of whether it is signed by either Agreeing Party. Any change to this Agreement will only be effective upon notice to Applicant/Employee and shall only apply prospectively.

815 F.3d at 195. Because the employer had retained "unilateral power to terminate the [arbitration agreement] without advance notice," the court concluded that agreement did not bind the employee, nor could the employer compel arbitration based on that agreement. *Id.* at 196.

Here, the Modification Clause is identical to the provision at issue in *Nelson*. *See* Doc. #5, Ex. A at 40. Like that provision, the Modification Clause does not require "advance notice to the employee . . . before termination is effective." *See Lizalde*, 746 F.3d at 226. As a result, Defendants could unilaterally terminate the Delegation Clause without having to provide advance notice to Plaintiff. *See Nelson*, 815 F.3d at 196; *cf. Lizalde*, 746 F.3d at 226 (holding that, pursuant to *Halliburton*, provision sufficiently restrained employer's unilateral termination power by requiring, *inter alia*, that termination was "not effective until ten days after reasonable notice [was] given to the employee"). Therefore, the Court finds that the Delegation Clause is illusory.[3] *See*

---

[3] The Court notes that *Nelson* did not reference a delegation clause in finding that the arbitration agreement was illusory. Even so, the FAA operates on an agreement to delegate "just as it does on any other" arbitration agreement. *Rent-A-Ctr.*, 561 U.S. at 70. Likewise, § 2 of the FAA "operates on the specific 'written provision' to 'settle by arbitration a controversy' that the party

8

*Nelson*, 815 F.3d at 196 (Defendant's] retention of this unilateral power to terminate the [arbitration agreement] without advance notice renders the [agreement] illusory.")

Accordingly, because the Modification Clause renders the Delegation Clause illusory, Defendants may not compel arbitration of Plaintiff's validity challenge. *See id.* (holding that defendant may not compel arbitration based on illusory arbitration agreement).

### c. Validity of Arbitration Agreement

In *Nelson*, the arbitration agreement provided that the employer "may make unilateral changes to the [agreement], purportedly including termination, and that such a change 'shall be immediately effective upon notice to employees.'" *Id.* Considering this provision, the Fifth Circuit determined that the employer had retained unilateral power to terminate the arbitration agreement without advance notice, rendering the agreement "illusory from the outset." *Id.*

Similarly, the Modification Clause gives Defendants unilateral power to alter the Plan without notice to Plaintiff. *See* Doc. #5, Ex. at 40. As a result, the Modification Clause also rendered the Plan "illusory from the outset." *See Nelson*, 815 F.3d at 196. Therefore, the Court finds that Plaintiff is not bound by the Plan. *See id.*

---

seeks to enforce." *Id.* at 72. It follows that a delegation clause is subject to the same validity challenges as an arbitration provision.
  Therefore, even if the *Nelson* court did not consider a delegation clause, its analysis applies here. In other words, it makes no difference that *Nelson* addressed an agreement to arbitrate and not an agreement to delegate because the FAA treats both agreements as the same. *See id.* at 70. Whether a party moves to enforce an agreement to arbitrate certain claims or to delegate questions of arbitrability, the agreement must comply with § 2 regardless. *See id.* at 72. Accordingly, as with any other arbitration agreement, an agreement to delegate is not illusory if the employer's retention of termination power "extends only to prospective claims," "applies equally to both the employer's and employee's claims," and requires "advance notice to the employee . . . before termination is effective." *See Lizalde*, 746 F.3d at 225.

9

**IV.     Conclusion**

The Court is mindful that, "[i]f there is a delegation clause, the motion to compel arbitration should be granted in almost all cases." *Edwards*, 888 F.3d at 744 (quoting *Kubala*, 830 F.3d at 202). But because the Delegation Clause itself and the rest of the Plan are illusory, the Court concludes that this dispute falls within the narrow category of cases that should stay in federal court. Accordingly, the Motion is hereby DENIED.

It is so ORDERED.

February 25, 2021
_____         _____
Date                                The Honorable Alfred H. Bennett
                                    United States District Judge